UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRYAN ANTHONY REO, *Pro Se*, ) | Case No.: 1:19 CV 2103 |
| ) | |
| Plaintiff ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| v. ) | |
| ) | |
| MARTIN LINDSTEDT, *Pro Se*, ) | |
| ) | |
| Defendant ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case are *pro se* Plaintiff Bryan Reo ("Plaintiff" or "Reo") and *pro se* Defendant Martin Lindstedt's ("Defendant" or "Lindstedt") cross-Motions for Summary Judgment (ECF Nos. 34, 37). For the reasons that follow, Plaintiff's Motion for Summary Judgment is granted in part with respect to liability but denied in part with respect to damages on Counts I, II, IV, and V; Defendant's Motion for Summary Judgment is granted with respect to Count III but otherwise denied.

### I. BACKGROUND

**A.  Facts**

This action, one of many in a series of legal skirmishes between Plaintiff and Defendant,[1] arises out of allegedly defamatory statements Defendant posted online following a June 2019 jury

---

[1]  *See Reo v. Lindstedt*, No. 14-CV-816 (N.D. Ohio filed Apr. 16, 2014); *Reo v. Lindstedt*, No. 19-CV-2589 (N.D. Ohio filed Nov. 5, 2019); *see also Reo v. Lindstedt*, No. 19-CV-2615 (N.D. Ohio filed Nov. 7, 2019) (involving Plaintiff's father); *Reo v. Lindstedt*, No. 19-CV-2786 (N.D. Ohio filed Nov. 26, 2019) (involving Plaintiff's wife).

verdict in the Lake County Common Pleas Court ("Lake County case") for Plaintiff and against Defendant. (Compl. ¶ 7, ECF No. 1-1.) Similar to the claims here, the Lake County case involved Plaintiff's claims of defamation per se and false light for statements Defendant made throughout 2015 and 2016. (*Id.*) The jury in that action awarded Plaintiff $105,000.00 in damages. (*Id.*)

The allegedly defamatory statements here occurred throughout 2018 and 2019 as the Lake County case progressed. According to Plaintiff, Defendant began posting statements on his website in September 2018 accusing Plaintiff of colluding with the judge in the Lake County case, corrupting the court proceedings, and engaging in perjury and barratry—which "constitutes a crime in most jurisdictions" and means "[v]exatious incitement to litigation," Barratry, Black's Law Dictionary (11th ed. 2019). (Compl. ¶¶ 8–18, 23, ECF No. 1-1.) During this same period, but seemingly unrelated to the Lake County case, Defendant also posted statements stating that Plaintiff "was stalking a man for purposes of coercing" him into sex, Plaintiff was mentally ill and sought sex-reassignment surgery in Paraguay, and Plaintiff was engaged in extramarital affairs with male attorneys throughout Ohio and Michigan. (*Id.* ¶¶ 14, 19, 20.) Plaintiff asserts that all of Defendant's statements are false and defamatory.

Defendant counters that the present action is nothing more than "another attempt by Bryan Reo to gin up a bogus and frivolous cause of action in order to steal under color of law Lindstedt's [South Dakota] inheritance" worth $2 million. (Second Am. Answer ¶ 17, ECF No. 29; *see also id.* ¶ 9.) Piecing together Defendant's often rambling narratives, the court gathers that Defendant—a self-avowed white supremacist (*id.* ¶ 9)—and Plaintiff encountered each other through online forums and "have fought with each other over their proper place within White Supremacy and Christian Identity since 2009–2010." (*Id.* at PageID #299.) As a result of this rancorous relationship, Plaintiff and Defendant have now been engaged in litigation for over half a decade.

**B.     Procedural History**

Plaintiff initiated this civil action against Defendant in the Lake County Court of Common Pleas on August 12, 2019. (Compl., ECF No. 1-1.) The Complaint asserts claims for defamation (Count I), false light invasion of privacy (Count II), infliction of emotional distress (Count III), punitive damages (Count IV),[2] and injunctive relief (Count V). (*Id.* ¶¶ 26–58.) Defendant removed the case to this court on September 12, 2019. (ECF No. 1.)

After removing this action, Defendant consistently struggled to conform to the Federal Rules of Civil Procedure, despite the court giving him many opportunities to do so. First, Defendant failed to timely file an Answer, prompting Plaintiff to seek a default judgment. (Appl. for Default, ECF No. 7.) Defendant eventually filed a "Quick Answer/Pleading" (ECF No. 8), which offered a cursory denial of Plaintiff's allegations and requested "additional time to make a more thorough amended answer." (*Id.* at PageID #41.) The court granted Defendant's extension request. (Order, ECF No. 19.) Second, Defendant improperly attempted to consolidate this action with other cases—those involving Plaintiff's wife and father—that were pending in state court. (Mots. to Consolidate, ECF Nos. 9, 14.) The court denied those motions as meritless. (Order, ECF No. 19.) Third, Defendant eventually filed an Amended Answer with Counterclaims (ECF No. 15) on October 17, 2019, but this filing "consist[ed] of rambling, largely irrelevant arguments, which [were] rife with personal insults and racial slurs." (Order at PageID #196, ECF No. 19.) Accordingly, the court struck Defendant's Amended Answer pursuant to Federal Rule of Civil Procedure 12(f). Fourth, with another chance to file a rule-compliant pleading, Defendant filed a Second Amended Answer (ECF No. 29) on November 27, 2019, that claimed to "cut down quite a bit of the racism," (*id.* at

---

[2] Plaintiff mislabels his request for punitive damage as a cause of action. Under Ohio law, "punitive damages are a remedy rather than a cause of action." *Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 497 (6th Cir. 2019).

-3-

PageID #328). But like the first Amended Answer, Defendant again included offensive slurs, personal insults, and rambling accusations against non-parties. Rather than strike the entire pleading, however, the court struck only paragraphs 2–8, 10–10C, and 39–44 and left intact those parts that could plausibly be considered relevant or responsive. (Order, ECF No. 35.) Finally, the parties failed to confer as required by Federal Rule of Civil Procedure 26(f).

Despite these problems, the court developed a workable case management schedule with the parties. (Order, ECF No. 30.) Pursuant to that schedule, Plaintiff submitted his Motion for Summary Judgment (ECF No. 34) on January 26, 2020. Defendant filed a Response in Opposition (ECF No. 37), which also serves as his cross-Motion for Summary Judgment, on February 24, 2020. Plaintiff filed a Reply (ECF No. 38) on February 26, 2020.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in the light most

favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4). Moreover, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted)).

## III. LAW AND ANALYSIS

As the procedural history indicates, this action has not been a model of efficient or effective litigation. Defendant's filings, rife with racist slurs and insults, have largely failed to conform with the Federal Rules of Civil Procedure.³ Plaintiff has responded with no less than five motions to strike.⁴ (ECF Nos. 11, 12, 16, 26, 31.) And now, at the summary judgment stage, Plaintiff has chosen to rely solely on Defendant's failure to respond to Plaintiff's requests for admissions—a procedural device under Federal Rule of Civil Procedure 36—rather than supplying other proof, such as copies of Defendant's allegedly defamatory statements. (*See* Pl.'s Mot. Summ. J. at PageID #373, ECF No. 34 ("Plaintiff has conclusively shown—via the unanswered requests for admissions—that defendant is liable to Plaintiff for the claims raised within Plaintiff's Complaint.").)

In keeping with this theme, the parties' cross-Motions for Summary Judgment offer terse arguments and vanishingly little authority. Plaintiff's Motion (ECF No. 34) seeks summary judgment on his claims "for common law defamation, common law invasion of privacy-false light, common law intentional infliction of emotional distress, punitive damages, and permanent injunctive relief." (*Id.* at PageID #372.) Relying exclusively on Defendant's deemed admissions under Rule 36,

---

<sup>3</sup> The court explained the potential benefits of retaining counsel during the Case Management Conference, but Defendant chose to represent himself because he refuses to support the "lawyer's monopoly" or engage "regimeist [sic] legal counsel." (Def.'s Mot. to Reconsider at PageID #438, ECF No. 39; *see also* Second Am. Answer ¶ 31, ECF No. 29 ("The past lawsuit under appeal simply goes to show that lawyers, and judges should be exterminated on sight.").)

<sup>4</sup> Although the court granted some of these motions, Plaintiff's high-volume approach to motion practice undoubtedly has slowed progress in this case. This phenomenon is not unique—Plaintiff similarly flooded the docket with motions to strike in other actions that are ongoing in this district. *See, e.g.*, *Reo v. Lindstedt*, No. 19-CV-2786, slip op. at PageID #213–14 (N.D. Ohio May 22, 2020) (admonishing "that the case will not proceed if the parties continue to file motions to strike" and "encourag[ing] the parties to avoid filing unnecessary motions").

Plaintiff asserts not only a right to relief but also "that a hearing regarding damages is not even required." (*Id.* at PageID #373.) For Defendant's part, his combined Response in Opposition/Motion for Summary Judgment (ECF No. 37) does not point to evidence in the record or cite a single case.

Despite Plaintiff's questionable decision to eschew other evidence, the court finds that Defendant's failure to respond to most of Plaintiff's requests for admissions is dispositive. Accordingly, as discussed below, the court finds that Plaintiff is entitled to summary judgment with respect to Defendant's liability on Counts I and II. However, the court finds that Defendant is entitled to summary judgment on Count III because Plaintiff's claim fails as a matter of law. Additional proceedings are necessary to determine the amount of damages to which Plaintiff is entitled.

**A.  Admissions**

Under Federal Rule of Civil Procedure 36, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection." Fed. R. Civ. P. 36(a)(3). Any "matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P.36(b). However, Rule 36 does not authorize requests for admissions of legal opinions. *See United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) ("Requests for admission may relate to the application of law to fact. Such requests should not be confused with pure requests for opinions of law, which are not contemplated by the rule. Nor are requests seeking legal conclusions appropriate when proceeding under Rule 36." (quoting 7 Moore's Federal Practice § 36.10[8] at 36–26 (3d ed. 2008))). Accordingly, courts can disregard requests for admissions that stray into the forbidden territory of legal conclusions. Moreover, the Sixth Circuit has "held that a formal motion is not always required" to withdraw admissions. *Petroff-Kline*, 557 F.3d at 293–94 (citing *Kerry Steel Inc. v. Paragon Indus.*, 106 F.3d 147, 153–54 (6th Cir.1997)). In some instances, courts can

impute withdrawal "from a party's actions, including the filing of a belated denial." *Petroff-Kline*, 557 F.3d at 293 (quotation omitted).

Here, the record shows that Plaintiff served Defendant with requests for admissions, interrogatories, and requests for production of documents via United States Postal Service First Class mail on December 19, 2019. (Requests for Admissions, ECF No. 34-1.) Plaintiff also sent Defendant an email that same day confirming the shipment. (Email Confirmation, ECF No. 34-2.) Defendant apparently received Plaintiff's discovery requests, but he never responded to them.[5]

The application of Rule 36 is complicated, however, by Defendant filing a Response in Opposition to Plaintiff's Motion for Summary Judgment. In the Response, Defendant "denies everything that Bryan Reo wants Pastor Lindstedt to admit" and claims that Plaintiff "has not made any effort to contact Pastor Lindstedt regarding his 'admissions.'"[6] (Def.'s Resp. and Mot. Summ. J. at PageID #417–18, ECF No. 37.) But, as already discussed, Defendant acknowledges that he received Plaintiff's requests for admissions. (*See id.* at PageID #419.) That being true, the onus fell on Defendant to respond—nothing in Rule 36 required Plaintiff to follow up or "[make] any effort

---

[5] Except for Plaintiff's certificate of service and his confirmation email, the record contains nothing establishing these critical facts. Plaintiff could have bolstered this point by submitting an affidavit or tracking information with a delivery confirmation, but he did not submit any such documentation. Even so, this failure is not fatal to Plaintiff's Motion because Defendant acknowledges the requests for admissions in his Response. (*See* Def.'s Resp. and Mot. Summ. J. at PageID #419, ECF No. 37 ("Bryan Reo has merely drafted up a harangue and called it yet again a 'request for admissions' the like of which has been done before in all the Bryan Reo cases since 2014.").) Because Defendant never objected to Plaintiff's discovery requests or otherwise brought any discovery dispute to the court's attention, and because the Response indicates Defendant's familiarity with Rule 36, the court is satisfied that, in fact, Defendant received the requests for admissions and failed to respond.

[6] Defendant also asserts that the court's February 5, 2020, Order "admits [that] . . . Pastor Lindstedt has denied all of Bryan Reo's allegations propounded in Bryan Reo's Requests for Admissions." (Def.'s Resp. and Mot. Summ. J. at PageID #416, ECF No. 37.) This is false; the court made no such finding. (*See* Order, ECF No. 35.)

to contact" Defendant. (*Id.* at PageID #417.) And while Defendant argues that Plaintiff's Motion "is on its very face frivolous precisely because there are ample genuine material facts," Defendant merely recounts his unsubstantiated accusations against Plaintiff without offering any evidence. (*Id.*) Far from refuting Plaintiff's Motion, such statements ultimately corroborate the allegations in Plaintiff's Complaint and confirm the veracity of Defendant's factual admissions. Indeed, in the paragraphs immediately preceding Defendant's vague, blanket "denial," Defendant calls Plaintiff "a delusion homosexual mongrel" and accuses him of conspiring with the state of Ohio, the federal government, and the "crooked Lake County Court" to pursue "malicious lawsuits" against Defendant—which are precisely the type of statements that caused Plaintiff to sue in the first place. (*Id.*) Moreover, Defendant acknowledges that Plaintiff "is suing over what has been posted on Pastor Lindstedt's Church's web page for years—there is really nothing new to discover from Pastor Lindstedt." (*Id.*) Finally, Defendant threatens to post "yet another thread on Pastor Lindstedt's Church's wed page" disparaging Plaintiff. (*Id.* at PageID #418.) Consequently, the court finds that Defendant's Response cannot plausibly be construed as a motion to amend or withdraw his admissions regarding the underlying factual conduct that give rise to this action.

While Defendant's Response in Opposition largely corroborates his admissions, two issues merit further attention. First, Defendant strenuously "denie[s] doing any real damage" to Plaintiff. (*Id.* at PageID #416.) Defendant asserts that Plaintiff cannot substantiate the damages he seeks and, further, that Plaintiff violated Federal Rule of Civil Procedure 26 by refusing to provide an initial computation of damages. (*Id.* at PageID #417.) Second, Defendant maintains that Plaintiff "is a limited-purpose public figure within the White Supremacist and/or Christian Identity Movement" rather than a private figure, as Plaintiff claims. (*Id.*) Given the clarity of these assertions, and their consistency with Defendant's prior filings, the court finds that Defendant's Response constitutes a

withdrawal of his admissions relative to these two matters.

In sum, after considering Defendant's Response as a whole, the court construes it as a partial motion to withdraw or amend Defendant's admissions with respect to Plaintiff's damages and Plaintiff's status as a private figure. This result—that Defendant admits the underlying actions giving rise to liability but not damages—comports with Defendant's previous filings, including his Second Amended Answer. (*Compare* Second Am. Answer ¶¶ 12–35, ECF No. 29 (admitting Defendant posted statements online that, among other things, accuse Plaintiff of barratry and corruption), *with id.* ¶¶ 36–37 (denying Plaintiff suffered damages).)

Consequently, by virtue of Rule 36 and Defendant's failure to respond to Plaintiff's request for admissions, Defendant has admitted the following relevant factual matters: (1) Defendant made statements of fact about Plaintiff that were false, including that Plaintiff engaged in barratry, vexatious litigation, and perjury; that Plaintiff stalked another person online; and that Plaintiff conspired with an Ohio judge to corrupt jury proceedings; (2) Defendant knew these statements were false; (3) Defendant published these statements to third parties via the internet; and (4) Defendant made these statements purposefully and with intent to cause Plaintiff to suffer damages in Ohio. (Requests for Admissions at PageID #379–83, ECF No. 34-1.)

**B.     Defamation**

Under Ohio law, "defamation occurs when a publication contains a false statement made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012) (citation omitted). To establish a defamation claim under Ohio law,

> the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was

> published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Anthony List v. Driehaus*, 779 F.3d 628, 632–33 (6th Cir. 2015) (quoting *Am. Chem. Soc.*, 978 N.E.2d at 852). In light of Defendant's deemed admissions, the first and third elements are satisfied. Thus, the court analyzes only the second, fourth, and fifth elements.

With regard to the second element, the court finds that Defendant's statements were defamatory. In Ohio, "it is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Driehaus*, 779 F.3d at 632 (quoting *Yeager v. Local Union 20*, 453 N.E.2d 666, 669 (Ohio 1983), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007)). In making this determination, courts employ a "reasonable reader" standard. *Croce v. New York Times Co.*, 930 F.3d 787, 793 (6th Cir. 2019) ("If a reasonable reader, reading a statement in the context of the entire publication, would interpret the statement as defamatory, then the plaintiff has an actionable claim."). Ohio recognizes two categories of defamation: per se and per quod. *Moore v. P. W. Pub. Co.*, 209 N.E.2d 412, 415 (Ohio 1965); *Becker v. Toulmin*, 553, 138 N.E.2d 391, 395–96 (Ohio 1956). The former occurs when a statement is defamatory on its face, whereas the latter occurs when a statement is defamatory through interpretation. *Moore*, 209 N.E.2d at 415. When a statement is defamation per se, courts presume both damages and actual malice. *Wampler v. Higgins*, 752 N.E.2d 962, 977 n.8 (Ohio 2001).

Here, Defendant's accusations that Plaintiff engaged in barratry, perjury, stalking, and conspiracy to corrupt judicial proceedings were all defamatory.[7] Any reasonable person would

---

[7] Defendant's deemed admissions also establish that he made statements regarding Plaintiff's sexual orientation, sexual identity, and extramarital sexual activity. (*See* Requests for Admissions at PageID #380–82, ECF No. 34-1.) Statements about sexual orientation and identity are not defamatory per se under Ohio law. *Wilson v. Harvey*, 842 N.E.2d 83, 89 (Ohio Ct. App. 2005). Similarly, the court concludes that

-11-

recognize that the nature of these statements necessarily damages Defendant's reputation and calls into question his fitness to practice law. (*See* Compl. ¶¶ 8, 14–18, 24, ECF No. 1-1.) Ohio courts agree. Indeed, it is well-established in Ohio that statements are defamatory per se if they accuse someone of engaging in criminal acts involving moral turpitude or cause reputational damage to the individual's trade or occupation. *See Schoedler v. Motometer Gauge & Equip. Corp.*, 15 N.E.2d 958, 961 (1938); *Grenga v. Vantell*, No. 14 MA 0011, 2016 WL 3573465, at *9 (Ohio Ct. App. June 29, 2016) ("This complaint . . . not only constitutes an attempt to damage [plaintiff's] reputation in his occupation and trade but also alleges criminal activity, both of which constitute defamation per se.").

Turning to the fourth element, the court finds that Plaintiff suffered damages. Because Defendant's statements constitute defamation per se, "[p]roof of the defamation itself establishe[s] the existence of some damages." *Gosden v. Louis*, 687 N.E.2d 481, 489 (Ohio Ct. App. 1996) (citing *Gertz v. Welch*, 418 U.S. 323, 349 (1974)); *see also Wampler*, 752 N.E.2d at 977 n.8 (noting a presumption of damages attaches to defamation per se). Defendant has offered nothing to rebut the presumption that Plaintiff has suffered at least some damages, even though Defendant's denial does raise a question as to the *amount* of damages.

Finally, the court also finds that Defendant acted with the requisite degree of fault. While a private figure suing for defamation need only show that the defendant was negligent in publishing a false statement, a "public figure" can recover only if the defendant published the defamatory

---

Defendant's statements regarding Plaintiff's sexual activity are not defamatory per se. Plaintiff therefore cannot maintain a defamation claim relative to these statements for two reasons: First, looking to the Complaint, the court concludes that Plaintiff only pled defamation per se. (*See* Compl. ¶¶ 31–33, ECF No. 1-1.) Second, even if Plaintiff did allege defamation per quod, he offers no proof of special damages, which is necessary for a such a claim. *See Wilson*, 842 N.E.2d at 89. Consequently, to the extent Plaintiff seeks to recover for statements regarding his sexual orientation, identity, and activity, those claims fail as a matter of law.

-12-

statement "with 'actual malice,'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Herbert v. Lando*, 441 U.S. 153, 156 (1979) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). In this context, reckless disregard means (1) publishing a statement with a "high degree of awareness of [its] probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964), or (2) publishing a statement despite "serious doubts as to [its] truth," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Ohio courts have explained that "[w]hether the evidence in the record supports a finding of actual malice is a question of law." *McKimm v. Ohio Elections Comm.*, 729 N.E.2d 364, 373 (Ohio 2000); *see also Driehaus*, 779 F.3d at 632. Because Defendant's statements are defamatory per se, the court presumes actual malice. *Wampler*, 752 N.E.2d at 977 n.8. Moreover, Defendant's admissions conclusively establish that he knew his statements were false and that he specifically intended to harm Plaintiff. Therefore, it does not matter whether Plaintiff is a private figure or a "limited-purpose public figure within the White Supremacist and/or Christian Identity Movement." (Def.'s Resp. and Mot. Summ. J. at PageID #418, ECF No. 37.) In either case, Defendant's actions and intent support a claim for defamation.

Accordingly, the court finds that Plaintiff is entitled to summary judgment on Count I for Defendant's defamatory statements relative to barratry, perjury, stalking, and conspiracy to corrupt judicial proceedings. But because questions remain regarding the amount of Plaintiff's damages, determination of that issue awaits further proceedings. *See Yellow Book USA, Inc. v. Brandeberry*, No. 3:10-CV-025, 2011 WL 3240558, at *2 (S.D. Ohio July 28, 2011) (noting the "Ohio Jury Instructions on damages for defamation per se provide that the jury is to decide the amount of money that is reasonable and fair for [] injuries directly caused by the alleged defamation.").

**C.  False Light Invasion of Privacy**

Ohio recognizes a tort for false light invasion of privacy:

> In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Welling*, 866 N.E.2d at 1059.

Both elements are satisfied here. First, for the same reasons that certain statements Defendant made constitute defamation per se, the court has no trouble finding that those accusations would be highly offensive to a reasonable person in Plaintiff's position. Second, Defendant's deemed admissions conclusively establish that Defendant acted with actual knowledge of the falsity of these statements.

Accordingly, Plaintiff is entitled to summary judgment on Count II for false light invasion of privacy relative to Defendant's statements concerning barratry, perjury, stalking, and conspiracy to corrupt judicial proceedings.

**D.    Intentional Infliction of Emotional Distress**

In Ohio, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Yeager*, 453 N.E.2d at 671, *abrogated on other grounds by Welling*, 866 N.E.2d at 1051. Ohio courts have interpreted this cause of action very narrowly. *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement."). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager*, 453 N.E.2d at 671 (citation omitted). Instead, to be considered "extreme and outrageous," conduct must "go beyond all possible bounds of decency, and [] be regarded as

atrocious, and utterly intolerable in a civilized community." *Id.* As the Ohio Supreme Court explained, it is not

> enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. . . . Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.*

In this case, the court finds that Defendant's conduct does not cross this demanding threshold. Defendant's deemed admissions establish that he falsely accused Plaintiff of criminal and unprofessional conduct and that he did so purposefully to harm Plaintiff. But while Defendant's persistent conduct posting these insults and accusations on a website devoted to White Supremacy may have caused annoyance and frustration for Plaintiff, the court concludes that Defendant's conduct falls short of the extreme and outrageous conduct required by the Ohio Supreme Court in *Yeager*. In other words, in light of the evidence Plaintiff has submitted, his claim for intentional infliction of emotional distress fails as a matter of law.

Accordingly, the court grants summary judgment for Defendant on Count III.

**E.     Punitive Damages**

Ohio law allows punitive damages "to punish the [tortfeasor] and deter tortious conduct by others." *Digital & Analog Design Corp. v. N. Supply Co.*, 590 N.E.2d 737 (Ohio 1992); *see also* Ohio Rev. Code § 2315.21. In general, punitive damages are appropriate only if the plaintiff shows that the defendant acted with "actual malice," which means "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."

*Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987); *see also* Ohio Rev. Code §§ 2315.21(C), (D)(4). While some Ohio courts have recognized exceptions for certain types of defamation cases, *see, e.g.*, *Gilbert v. WNIR 100 FM*, 756 N.E.2d 1263, 1277 (Ohio Ct. App. 2001) ("[I]f the plaintiff is a private individual and the matter is not of public concern, the plaintiff need not show actual malice to recover punitive damages."), those distinctions are not material here because the court concludes that Defendant acted with actual malice.

As discussed above, by virtue of Defendant's deemed admissions, the record establishes that Defendant acted with specific intent to cause Plaintiff harm. Furthermore, Defendant acknowledges that the parties have a long history of animosity characterized by ill-will and "mutual hatred," and that Defendant's statements ridiculing Plaintiff stem from retaliatory impulses rooted in those feelings. (Def.'s Resp. and Mot. Summ. J. at PageID #415, ECF No. 37; *see also id.* at PageID #418–19; Second Am. Answer at PageID #328, ECF No. 29.) On these facts, the court finds that Defendant acted with actual malice. Therefore, punitive damages are available.

However, just because Plaintiff is entitled to punitive damages does not mean the court must award them. The Ohio Supreme Court has explained that "an award of punitive damages is not automatic. Even when a plaintiff can establish entitlement to punitive damages, whether to impose punitive damages, and in what amount, is left to the trier of fact." *Whetstone v. Binner*, 57 N.E.3d 1111, 1115 (Ohio 2016). Additional proceedings are needed to determine whether a punitive damages award is appropriate in this case and, if so, in what amount.

**F.  Injunctive Relief**

Usually, the "rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages." *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. 1990) (quotation omitted). The hesitance to grant equitable relief in defamation cases stems from

First Amendment concerns regarding prior restraints on speech. *Id.* But, in *Lothschuetz*, the Sixth Circuit recognized "a narrow and limited" exception to the no-injunction rule when equitable relief is necessary to stop "frequent and continuing defamatory statements" and the plaintiff has no other recourse to prevent harm to her personal reputation and business relations. *Id.* at 1209 (Wellford, J., concurring in part and dissenting in part). Likewise, Ohio courts recognize the availability of injunctive relief in defamation cases when "damage to one's reputation cannot be adequately compensated monetarily, nor [can money] put [the plaintiff] in the same position she was in prior to the defamation." *Sky v. Van Der Westhuizen*, 136 N.E.3d 820, 836 (Ohio Ct. App. 2019) (affirming permanent injunction "enjoining Appellant from any future acts of defamatory publications and harassment and ordering the removal of the defamatory statements" that existed online). Importantly, courts have limited the scope of "such injunction[s] to the statements which have been found in . . . prior proceedings to be false and libelous." *Lothschuetz*, 898 F.2d at 1209 (Wellford, J., concurring in part and dissenting in part); *see also N. Am. Recycling, LLC v. Texamet Recycling, LLC*, No. 2:08-CV-579, 2012 WL 3283380, at *1 (S.D. Ohio Aug. 10, 2012) (applying *Lothschuetz* and prohibiting "only speech that in fact is false and defamatory"). By adhering to this limitation, courts sidestep the issue of prior restraint because the resulting injunction applies only to defamatory statements, which the First Amendment does not protect. *See N. Am. Recycling*, 2012 WL 3283380, at *2 (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942)).

The decision to grant or deny a permanent injunction lies within the court's sound discretion and requires consideration of traditional principles of equity. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). In light of those principles, the court concludes that an injunction is appropriate here. The court already has determined that Plaintiff is entitled to summary judgment on Counts I and II for defamation and false light invasion of privacy—that is, Plaintiff has

demonstrated that he is entitled to relief because he has suffered an injury caused by Defendant's persistent defamatory statements. Further, money damages alone are an insufficient remedy because, if left unchecked and available online, Defendant's defamation will continue to damage Plaintiff's reputation and business dealings. Indeed, the court looks no further than Defendant's Response in Opposition to find a blatant threat of additional defamatory statements. (*See* Def.'s Resp. and Mot. Summ. J. at PageID #418, ECF No. 37.) Because Defendant has no legal right to defame Plaintiff, an injunction preventing such statements will not cause any hardship to Defendant.

These facts are similar to *Lothschuetz* and *North American Recycling*, where the Sixth Circuit and Southern District of Ohio, respectively, determined that equitable relief was appropriate. Accordingly, the court hereby grants Plaintiff's request for a permanent injunction. Following the Sixth Circuit's guidance, the court "limit[s] the application of such injunction to the statements which have been found in this and prior proceedings to be false" and defamatory. *Lothschuetz*, 898 F.2d at 1209 (Wellford, J., concurring in part and dissenting in part). Defendant shall: (1) cease and desist from making or publishing statements regarding Plaintiff's lawsuits, legal practice, and business dealings that are the same, or significantly similar, in nature to the statements the court has found to be defamatory in this case; and (2) to the fullest extent possible, Defendant shall remove or cause to be removed from all websites and publications all statements Defendant has made that this court has found to be defamatory, as well as any statements similar in nature published during or before the current proceedings regarding Plaintiff's lawsuits, legal practice, and business dealings.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 34) is granted with respect to liability on Counts I and II but denied with respect to damages. Defendant's Motion for Summary Judgment (ECF No. 37) is granted with respect to Count III and denied in all other

respects. As to Count IV, the court concludes that Plaintiff is entitled to punitive damages, but further proceedings are required to determine the amount. Finally, consistent with the discussion above, the court hereby grants Plaintiff's request in Count V for a permanent injunction requiring that Defendant: (1) cease and desist publishing statements that are the same, or significantly similar to, the statements the court has found to be defamatory in this case, and (2) remove all statements that have been found to be defamatory, as well as any statements similar in nature published during or before the current proceedings, from all websites and other publications.

The court will hold a telephonic conference with the parties on November 30, 2020, at 10:30 a.m., to implement a process and procedures for determining damages. Dial-in information for the conference shall issue separately.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 28, 2020